IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Crim. No. 1:16-CR-0322** |
| | : | |
| v. | : | |
| | : | |
| **KEVIN DWIGHT HOLLAND** | : | **Judge Sylvia H. Rambo** |

# M E M O R A N D U M

Presently before the court is Defendant's motion to suppress evidence recovered from both his person and an automobile in which he was a passenger during a search incident to his arrest on February 8, 2016. For the reasons stated herein, the motion will be denied.

## I. Background

On November 2, 2016, Defendant was charged in a three-count Indictment with possession with the intent to distribute cocaine base in violation of 21 U.S.C. § 841 (Count I), possession of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Count II), and felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Doc. 1.)

Defendant moved to suppress the evidence supporting the charges in the Indictment (Doc. 21), and the court held a hearing on May 8, 2017. At the

suppression hearing, Susquehanna Township Police Department Patrolman Darryl Brown testified as to the events of February 8, 2016, which lead to the Indictment.[1] According to Patrolman Brown, he was on patrol in an unmarked police vehicle on the night of February 8, 2016. Sometime after 11:00 p.m. he entered the parking lot of the Days Inn located on North Front Street, which is a high-contact location of criminal activity for his department, frequently involving illegal narcotics and prostitution. As Patrolman Brown entered the parking lot from the Parkway Road entrance in the rear of the hotel, he noticed an occupied vehicle parked to his right. Patrolman Brown circled around the hotel's parking lot and saw the occupied vehicle reverse out of the parking space and head towards the Front Street side of the hotel. Patrolman Brown followed the vehicle to the front of the Days Inn, where it briefly stopped before pulling into a handicapped parking space.

After a short period of time, and upon seeing no one exit the vehicle, Patrolman Brown suspected illegal activity and decided to approach the vehicle on foot. The occupants of the vehicle did not notice Patrolman Brown walk up to the passenger side of the vehicle, as he had not blocked the vehicle with his patrol unit or engaged its lights or sirens, and he was not using his flashlight. Upon arriving at the passenger side of the vehicle, Patrolman Brown saw Defendant sitting in the front passenger seat with a plastic bag of what appeared to be marijuana between

---

[1] The facts testified to by Patrolman Brown are also contained in his Police Report of February 9, 2016. (*See* Gov't. Ex. 1 to May 8, 2017 Suppression Hearing.)

his legs, and rolling what also appeared to be marijuana into a cigar wrapper. Patrolman Brown immediately advised both the driver and passenger to place their hands on the dashboard and called for backup. When Patrolman Gomez arrived, Patrolman Brown removed Defendant from the vehicle and detected a strong odor of marijuana. Patrolman Brown then handcuffed Defendant and conducted a search of his person before placing him in a patrol unit. The search of Defendant's person yielded one small – and three large – plastic bags containing crack cocaine, as well as a black Springfield XD forty-caliber pistol.

Two additional backup officers arrived at the scene, at which point the driver of the vehicle, identified as Morgan Wylie, was removed from the vehicle. Upon her exit, marijuana residue was visible on the driver's seat, and Ms. Wylie was handcuffed and searched. No additional contraband was found on her person and Patrolman Brown advised her that he was going to search the vehicle. The automobile search uncovered several packs of cigars, a marijuana "roach" in the front center compartment, a digital scale located in a purse on the back seat, and two glass jars containing marijuana residue in the trunk. Both Ms. Wylie and Defendant were then arrested and charged in criminal complaints.

Defendant has moved to suppress all of the evidence seized pursuant to the searches of his person and the automobile on the basis that no warrants were sought or issued for the searches, and because Patrolman Brown lacked probable

cause to conduct the warrantless searches or arrest of Defendant. (*See* Doc. 23.) The Government has submitted its opposition (Doc. 30) and the motion is ripe for disposition.

**II.    Legal Standard**

The Fourth Amendment to the United States Constitution grants individuals the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. As the United States Supreme Court has repeatedly held, "[t]he touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). "Searches conducted absent a warrant are *per se* unreasonable under the Fourth Amendment, subject to certain exceptions." *United States v. Katzin*, 769 F.3d 163, 169 (3d Cir. 2014) (citing *United States v. Harrison*, 689 F.3d 301, 306 (3d Cir. 2012)). The two relevant exceptions here are the search-incident-to-arrest exception and the automobile exception. The search-incident-to-arrest exception is based on the need to preserve evidence and maintain the safety of law enforcement, *see Chimel v. California*, 395 U.S. 752, 762-63 (1969), and because a "custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." *Riley v. California*, __ U.S. __, 134 S. Ct. 2473, 2483 (2014). In the context of a search incident to arrest where the arrestee is in a

vehicle, police officers may search the vehicle "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Arizona v. Gant*, 556 U.S. 332, 343 (2009) (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in judgment)). Under the automobile exception, "[i]f probable cause justifies the search . . . , it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Donahue*, 764 F.3d 293, 300 (3d Cir. 2014) (quoting *United States v. Ross*, 456 U.S. 798, 825 (1982)) (alterations in original).

Turning to seizures under the Fourth Amendment, courts have recognized three levels of interactions between police officers and members of the public: 1) consensual encounters where no seizure occurs; 2) brief investigatory stops that result in temporary seizures and must be based on reasonable suspicion; and 3) arrests that constitute seizures and require probable cause. *See United States v. Brown*, 765 F.3d 278, 288 (3d Cir. 2014). Because no seizure results from consensual encounters, no level of suspicion of criminal activity is required. *See United States v. Williams*, 413 F.3d 347, 352 (3d Cir. 2005) (stating that police officers do not violate the Fourth Amendment "merely by approaching individuals on the street or in other public places"). An interaction is consensual if "a reasonable person would feel free 'to disregard the police and go about his business.'" *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (quoting *California v.*

*Hodari D.*, 499 U.S. 621, 628 (1991)). Once the police make a show of authority and a reasonable person would no longer feel free to leave, the encounter loses its consensual nature and an investigatory, or *Terry*, stop results for which police need to have an objectively reasonable suspicion of criminal activity, considering the totality of the circumstances. *See Brown*, 765 F.3d at 288; *see also Navarette v. California*, __ U.S. __, 134 S. Ct. 1683, 1687 (2014). During a *Terry* stop, officers may conduct a limited pat down, or frisk of a person's outer clothing, to search for weapons. *Terry v. Ohio*, 392 U.S. 1, 28 (1968). For the interaction between police and the member of the public to lawfully rise to the level of an arrest, the officers must have probable cause to make the arrest. *Brown*, 765 F.3d at 288 (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

### III.   Discussion

In the matter *sub judice*, Patrolman Brown was patrolling a notoriously high-crime area in an unmarked vehicle. He observed an occupied vehicle at nearly midnight making suspicious changes of location throughout the parking lot of a hotel and ultimately parking illegally in a handicapped parking space. At no point during his patrol of the Days Inn parking lot did Patrolman Brown engage his lights or siren or make any other show of authority. Indeed, as Patrolman Brown testified, it did not appear to him that Defendant or Ms. Wylie were aware of his

presence until he approached their car on foot and knocked on the passenger window.

Before knocking on the window, Patrolman Brown observed Defendant rolling what he believed to be a marijuana "blunt" with a bag of marijuana between his legs. At that point, not even a consensual encounter had occurred between Patrolman Brown and Defendant. *See Brown*, 765 F.3d at 288 (quoting *Bostick*, 501 U.S. at 434) ("[A] Fourth Amendment seizure 'does not occur simply because a police officer approaches an individual and asks a few questions.'"). The observation of marijuana in Defendant's possession in plain view certainly gave Patrolman brown reasonable suspicion – if not probable cause – that Defendant was engaged in criminal activity. Thus, the court finds that Patrolman Brown was justified in escalating the interaction to an investigatory stop by making a show of authority and ordering Defendant and Ms. Wylie to place their hands on the dashboard.

When backup arrived and Patrolman Brown removed Defendant from the vehicle, he detected a strong odor of marijuana, and at that point had probable cause to arrest and search Defendant. Accordingly, the court finds that Patrolman Brown's search of Defendant's person was a lawful search incident to arrest, and there is no basis upon which to suppress the crack cocaine and firearm that were found on Defendant's person. Because Patrolman Brown had probable cause to

search and arrest Defendant, he was authorized under both the search-incident-to-arrest and automobile exceptions as stated in *Gant* and *Ross*, respectively, to conduct a thorough search of the vehicle. Under the automobile exception, Patrolman Brown had authority to search all parts of the vehicle and any of its contents, *see Donahue*, 764 F.3d at 300, and therefore the court will not suppress the digital scale, cigars, marijuana "roach," or the glass jars containing marijuana residue that were recovered during the vehicle search.[2]

## IV. Conclusion

As stated herein, Patrolman Brown had the requisite suspicion and probable cause during his surveillance, approach, and eventual arrest and search of Defendant and the vehicle to satisfy the requirements of the Fourth Amendment at each stage of his encounter with Defendant on February 8, 2016. Accordingly, all the evidence discovered during the search of Defendant and the vehicle was lawfully obtained and will be admissible at trial.

An appropriate order will issue.

                                                      s/Sylvia H. Rambo
                                                      SYLVIA H. RAMBO
Dated: May 16, 2017                          United States District Judge

---

[2] Although not raised by either party, the court notes that, under Third Circuit precedent, "a passenger in a car that he neither owns nor leases typically has no standing to challenge a search of the car." *United States v. Burnett*, 773 F.3d 122, 131 (3d Cir. 2014) (quoting *United States v. Baker*, 221 F.3d 438, 441-42 (3d Cir. 2000)). While Defendant could have attempted to establish that he nonetheless had a reasonable expectation of privacy in the vehicle and its contents, he made no such attempt, and his lack of standing serves as another basis to deny his motion to suppress as to the items recovered from the automobile search.