1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
HARRISBURG DIVISION

UNITED STATES OF AMERICA          :   CASE NO.
                                  :
          v.                      :
                                  :
                                  :
KEVIN DWIGHT HOLLAND              :   1:16-CR-00322-1


TRANSCRIPT OF PROCEEDINGS
CHANGE OF PLEA


Held before the HONORABLE SYLVIA H. RAMBO
October 2, 2017, commencing at 9:55 a.m.
Courtroom No. 3, Federal Building, Harrisburg, Pennsylvania




APPEARANCES:

MICHAEL A. CONSIGLIO, ESQUIRE
United States Attorney's Office
228 Walnut Street, Suite 220
Harrisburg, PA  17108
    For the United States

WENDY J.F. GRELLA, ESQUIRE
1119 North Front Street, Suite 1
Harrisburg, PA 17102
    For the Defendant

REBEKAH BILLINGS, U.S. PROBATION OFFICE



    Proceedings recorded by machine shorthand; transcript
produced by computer aided transcription.
_____
Wendy C. Yinger, RMR, CRR
Official Court Reporter
wendy_yinger@pamd.uscourts.gov

2

1          THE COURT:  Good morning, everyone.

2          MS. GRELLA:  Good morning, Your Honor.

3          MR. CONSIGLIO:  Good morning.

4          THE COURT:  Mr. Consiglio.

5          MR. CONSIGLIO:  If it please the Court, the

6   Government calls its case against Kevin Dwight Holland, docket

7   number 16-322.  He is present today in court with his counsel,

8   and we were scheduled to have a change of plea proceeding.

9          THE COURT:  Ms. Grella, do you wish to place

10  something on the record?

11         MS. GRELLA:  Yes, Your Honor.  Good morning, may it

12  please the Court.  Per notice that we've given the Court last

13  week, it was my intention this morning from Mr. Holland to

14  plead open to the plea agreement in place.  It has come to my

15  attention though that he is respectfully requesting a trial in

16  this matter, Your Honor, and is declining the open plea.  Is

17  that correct, Mr. Holland?

18         THE DEFENDANT:  No.

19         THE COURT:  What?

20         THE DEFENDANT:  No.

21         THE COURT:  No?  It's not your -- what is your

22  intention today?

23         THE DEFENDANT:  My intention is for an open plea.

24  But at the same time, I just feel the lawyer that I have is not

25  working with me properly.

3

1          THE COURT:  Pardon?

2          THE DEFENDANT:  I feel though that the lawyer I have

3    is not representing me properly.

4          THE COURT:  You're not going to get another one.  Ms.

5    Grella, do you want to place on the record what you have done

6    in this case?

7          MS. GRELLA:  Yes, Your Honor, may it please the

8    Court.  I was appointed to represent Mr. Holland on November

9    8th of 2016.  Since that time, I've provided my client with all

10   of his discovery documents.  I met with him at least two times

11   at Dauphin County Prison prior to his moving to Columbia County

12   Prison.  I provided him with a plea agreement that was extended

13   by the Government in this case, which would have been a plea to

14   924(c).

15         THE COURT:  Hold on.  Which count?

16         MS. GRELLA:  I believe it is Count 2 of the

17   indictment, Your Honor.

18         THE COURT:  Go ahead.

19         MS. GRELLA:  The 924(c).  In my opinion, Mr. Holland

20   would be declared a career offender based on his criminal

21   history status, and I advised him that I believe his guideline

22   sentence, if he were to proceed to trial, would be 30 years to

23   life.

24         I also provided him with a written letter outlining

25   all four of his options in this case.  That was provided to him

4

1   via facsimile after numerous conferences not only with him, but
2   I met in the office with his paramour, who's also the mother of
3   his child, two times.  And I also met with his grandmother with
4   his paramour for about a two-hour conference in my office as
5   well.
6          In my September 26th letter to Mr. Holland, I
7   outlined basically his four options:  To proceed to a jury
8   trial, to proceed to a nonjury trial, plead pursuant to the
9   plea agreement in place, or plead without a plea agreement.  I
10  advised him of the consecutive five-year mandatory minimums in
11  this case, both for Count 1 as well as Count 2.
12         I also advised him of what his appellate rights would
13  be either pursuant to the plea agreement or if he would proceed
14  with an open plea or a plea without a plea agreement in place.
15  All of that was provided to him in writing.  I've also advised
16  him and provided him with a copy of the U.S. sentencing
17  guideline for the career offender status, which is 4B1.1, and
18  outlined to him my reasons why I felt and believed probation
19  would declare him a career offender.
20         I also provided him with factors that I considered
21  and I thought the Court would consider in finding either
22  variances or downward departures that might be beneficial in
23  his behalf.  I also subpoenaed his Dauphin County juvenile
24  probation file, which contained three psychological
25  evaluations, which I believe contain mitigating factors for

5

1  both Mr. Terz and the Court to consider at the time of

2  sentencing.

3          That being said, Your Honor, I believe I have given

4  him all four of his options.  I did have the letter that I sent

5  to Mr. Holland proofread by other attorneys in the federal

6  public defenders office to make sure I wasn't missing anything.

7  Three attorneys consulted with me and advised me that the

8  letter was appropriate, that it was accurate information, and

9  that it was beneficial to provide that to Mr. Holland in

10  writing.

11          THE COURT:  Is it your desire, Mr. Holland, to

12  proceed to a jury trial in this case?

13          THE DEFENDANT:  No.

14          THE COURT:  Are you here to enter a plea of guilty to

15  all three counts?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Okay.  The Court was advised that you did

18  not wish to proceed today.

19          THE DEFENDANT:  Your Honor --

20          THE COURT:  What your counsel has said and placed on

21  the record, do you dispute what she's done in this case?

22          THE DEFENDANT:  I don't dispute, but at the end of

23  the day, I just felt like when she brought it to my attention,

24  that it was either go to trial or open plea.  It was on short

25  notice.  So I was just like, I was basically -- I was misguided

6

1    myself, but at the same time I just --

2            THE COURT:  Do you wish to accept a plea agreement

3    that's been offered by the Government?

4            THE DEFENDANT:  No.

5            THE COURT:  You don't?  You wish to proceed to enter

6    a plea, an open plea without a plea agreement on all three

7    counts?

8            THE DEFENDANT:  Yes.

9            THE COURT:  All right.  I guess we'll proceed then.

10   We'll take your plea.  Place him under oath.

11           **KEVIN DWIGHT HOLLAND, DEFENDANT, SWORN**

12                       **EXAMINATION**

13   BY THE COURT:

14   Q.   Mr. Holland, before I can accept your plea, it will be

15   necessary for me to establish for the record that you

16   understand your rights and the consequences of your plea.  You

17   have been placed under oath, and you should be advised that if

18   you give me any false answers to the questions that I expound

19   to you, you could be subject to further prosecution for perjury

20   or false swearing.  Do you understand that?

21   A.   Yes, ma'am.

22   Q.   Do you further understand that if you went to trial in

23   this matter, you could not be forced to take the witness stand

24   and testify against yourself.  However, because you're entering

25   a plea to all three counts, it is necessary for me to establish

1  for the record your involvement in these counts.  I will ask

2  questions concerning your involvement, and you should respond

3  thereby giving up your right against self-incrimination.  Do

4  you understand that?

5  A.    Yes.

6  Q.    How old are you?

7  A.    23.

8  Q.    How far have you gone in school?

9  A.    I have my GED.

10  Q.    You got your GED?

11  A.    Yeah.

12  Q.    Do you fully read and write English?

13  A.    Yes, ma'am.

14  Q.    Have you taken any drugs or alcohol before coming into

15  court today?

16  A.    No, ma'am.

17  Q.    Are you undergoing any psychological or psychiatric

18  counseling of any kind?

19  A.    No, ma'am.

20  Q.    Now I'm going to ask you if you are satisfied with your

21  counsel to date.  And you have indicated that you are not.

22  What she has placed on the record, in my opinion, is more than

23  what is expected of a counsel faced with the type of case that

24  you have, and I will not replace her.  Do you understand that?

25  A.    Yes, ma'am.

8

1  Q.    And I understand that you have waived any plea agreement
2  that's been presented to you?
3  A.    Yes.
4  Q.    Now there is no plea agreement in this matter.  And I
5  would ask whether or not there have been any threats against
6  you or any member of your family to enter into a plea
7  agreement?
8  A.    No, ma'am.
9  Q.    Are you entering into this plea agreement of your own free
10 -- excuse me, entering into this plea of your own free will?
11 A.    Yes, ma'am.
12 Q.    And nobody has placed any pressure on you to get you to
13 enter a plea?
14 A.    No, ma'am.
15 Q.    Now you know you are entitled to a jury trial, and you may
16 proceed in a not guilty plea and seek a jury trial.  At a jury
17 trial, you and counsel would select a jury consisting of 12
18 persons.  And at that trial, the Government would have the
19 responsibility of proving each and every element of the crime
20 charged against you beyond a reasonable doubt, and you're
21 presumed innocent until that burden is met.
22      At a trial, you would have the right to cross-examine any
23 witnesses the Government would present.  And you, in turn,
24 would have the right to subpoena witnesses and evidence on your
25 own behalf although you're not required to do so.  Any finding

9

1  of guilt by a jury would have to be unanimous; that is, all 12

2  jurors persons would have to agree.

3      If you give up your right to a jury trial, you give up

4  your right to present any defenses that you may have or the

5  right to appeal any pretrial motions.  Do you understand your

6  right to a jury trial?

7  A.   Yes.

8  Q.   Is it your desire to give up that right and enter pleas of

9  guilty to Counts 1, 2, and 3 of the indictment?

10  A.   Yes, ma'am.

11          THE COURT:  Mr. Consiglio, do you wish to place on

12  the record what facts you would present in support of these

13  charges?

14          MR. CONSIGLIO:  Yes, Your Honor.  As the Court's

15  noted, the Defendant is entering a guilty plea to Counts 1, 2,

16  and 3 of the indictment.  If required to go to trial, the

17  Government would present evidence that on or about February

18  8th, 2016, at the Days Inn located on North Front Street in

19  Susquehanna Township, a patrol officer observed the Defendant

20  in a vehicle parked in the parking lot.

21          This officer, Patrolman Brown from the Susquehanna

22  Township Police Department, circled around the parking lot and

23  then saw that the vehicle the Defendant was in had moved to

24  another location towards the front of the hotel.  Officer Brown

25  approached the vehicle, and seeing that the vehicle had been

10

1  parked in the handicapped parking spot, had contact with the

2  passenger side of the vehicle and saw the Defendant sitting

3  there in the seat with a plastic bag with what appeared to be

4  marijuana between his legs, rolling what appeared to be

5  marijuana into a cigar wrapper.

6         Officer Brown advised the driver as well as the

7  Defendant to place their hands on the dashboard, and he called

8  for back-up.  Another officer arrived to support Officer Brown,

9  and the Defendant was removed from the vehicle.  When he was

10 removed from the vehicle, he detected a strong odor of

11 marijuana.  They conducted a search of the Defendant's person.

12        What was recovered from the Defendant's person was

13 one small bag that had three large plastic bags inside of it

14 containing crack cocaine.  They also found a black Springfield

15 XD .40 caliber semiautomatic pistol.  They also recovered

16 several packs of cigars, marijuana roach in the front passenger

17 compartment, a digital scale located in a purse in the back

18 seat, and two glass jars containing marijuana residue in the

19 trunk.

20        The Pennsylvania State Police examined the crack

21 cocaine that was recovered and confirmed that it was crack

22 cocaine and weighed in excess of 28 grams.  The Bureau of

23 Alcohol, Tobacco and Firearms conducted an examination of the

24 Springfield XD .40 caliber handgun and determined that it was

25 manufactured outside of the Commonwealth of Pennsylvania.

11

1  Specifically it was manufactured in Croatia.

2          If required to go to trial, the Government would

3  present evidence that the Defendant possessed this firearm as a

4  felon, that he had a prior conviction that prohibited his

5  possession of such firearm, that he possessed the firearm in

6  furtherance of drug trafficking, in addition that he possessed

7  the 28 grams of crack cocaine with the intent to distribute.

8          THE COURT:  First of all, Mr. Holland, on Count 1, on

9  the evening of February 8th, 2016, at the Days Inn -- what

10  township was that?

11          MR. CONSIGLIO:  Susquehanna Township.

12          THE COURT:  -- Susquehanna Township, did you possess

13  28 grams or more of cocaine base?

14          THE DEFENDANT:  Yes.

15          THE COURT:  On that same date, did you carry a

16  firearm, a Springfield XD .40 caliber handgun?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And on that date, had you previously been

19  convicted of a crime that was punishable by a term exceeding

20  one year?  Were you previously convicted of a crime that

21  carried a sentence exceeding one year?

22          THE DEFENDANT:  Yes.

23          THE COURT:  What was that crime?

24          MS. GRELLA:  It was a possession with intent to

25  distribute, Your Honor.  That was in Dauphin County.

12

1          THE COURT:  Dauphin County.  And that carried a term

2  exceeding one year?

3          THE DEFENDANT:  Yes.

4          THE COURT:  And you were found -- you either pled or

5  were found guilty of that offense?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you understand that having previously

8  been convicted of a crime carrying more than one year, that you

9  are prohibited from possessing a firearm?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Now has anyone indicated to you what your

12  sentence would be?

13          THE DEFENDANT:  (No response.)

14          THE COURT:  In other words, has anyone promised you

15  that you would receive a certain sentence?

16          THE DEFENDANT:  No.

17          THE COURT:  Do you understand that Count 1 -- follow

18  me on this, Mr. Consiglio -- carries a term of imprisonment of

19  up to 40 years, a fine of 4 million dollars, and a term of

20  supervised release of up to five years, and that carries a

21  mandatory minimum of five years.

22          Count 2 is imprisonment of up to life, a fine of

23  250,000 dollars, a term of supervised release of up to life,

24  with a mandatory minimum of five years.  And Count 3 carries a

25  maximum term of imprisonment of up to 10 years, a fine of

13

1  250,000 dollars, and a term of supervised release.  Plus you

2  are subject to costs of prosecution, denial of certain federal

3  benefits, and a special assessment of 100 dollars on each

4  count.

5        Now this Court, in determining an appropriate

6  sentence for you, must first look to what we call the

7  sentencing guidelines.  And that's all they are, they are

8  guidelines.  I may depart or vary upward or downward depending

9  upon what we learn about you, your background, and the offenses

10 that were involved in this case.  Do you understand that?

11        THE DEFENDANT:  Yes.

12        THE COURT:  Anything the Court has not covered?

13        MR. CONSIGLIO:  The only thing I would just want to

14 clarify for the record, because I think Ms. Grella made

15 reference to it, and the Court just made reference to the

16 mandatory minimums.  At Count 1, there is a five-year mandatory

17 minimum punishment.  At Count 2, there is a five-year mandatory

18 minimum punishment that must be consecutive to Count 1.  So

19 there will be 10 years of mandatory minimum punishment in this

20 case.

21        THE COURT:  Thank you for that clarification.  Do you

22 understand what he just said?

23        THE DEFENDANT:  Yes.

24        THE COURT:  Is it your desire then to enter a plea of

25 guilty to Counts 1, 2, and 3?

14

1          THE DEFENDANT:  Yes.

2          THE COURT:  We'll enter this order:

3          AND NOW, this 2nd day of October, the year 2017, the

4    Court finds that the Defendant is acting voluntarily and not as

5    a result of force or threats or promises, that he understands

6    his rights and consequences of his plea, and voluntarily waives

7    his right to trial.

8          The Court is satisfied that the plea has a basis in

9    fact and contains all the elements of the crimes charged.  The

10   Court, therefore, permits the revocation of the not guilty plea

11   and accepts the plea of guilty to Counts 1, 2, and 3 of the

12   indictment, and directs the entry of judgment of guilty on the

13   plea.

14          Sentence is deferred pending receipt of the Court of

15   a pre-sentence report, which shall be disclosed no later than

16   November 27, 2017.  If counsel desire to file a sentencing

17   memoranda, such shall be filed five days prior to the date of

18   sentencing.

19          MR. CONSIGLIO:  Your Honor, just one additional

20   matter, as I look through my check list.  I don't believe -- I

21   do not believe it applies to this Defendant, but the illegal

22   immigration status.

23          THE COURT:  Oh.  Do you understand that if you are

24   not a U.S. citizen, you could be deported?

25          THE DEFENDANT:  Yes.

15

1          THE COURT:  Are you a U.S. citizen?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Okay.  Thank you.  Thank you, Mr.

4    Consiglio, for reminding me of that.

5          THE COURT:  Court's adjourned.

6          COURTROOM DEPUTY:  Court's adjourned.

7          (Proceeding adjourned at 10:13 a.m.)

8          **********************************

9

10                       CERTIFICATION

11

12          I, Wendy C. Yinger, Federal Official Realtime Court

13   Reporter, in and for the United States District Court for the

14   Middle District of Pennsylvania, do hereby certify that

15   pursuant to Section 753, Title 28, United States Code, that the

16   foregoing is a true and correct transcript of the

17   stenographically reported proceedings held in the

18   above-entitled matter and that the transcript page format is in

19   conformance with the regulations of the Judicial Conference of

20   the United States.

21

22                    /s/ Wendy C. Yinger
                      Wendy C. Yinger, RMR, CRR
23                    U.S. Official Court Reporter
                      (717)440-1535
24

25       (The foregoing of this transcript does not apply to any
     reproduction of the same by any means unless under the direct
     control and/or supervision of the certifying reporter.)